Case number 25-1351 from the Western District of Missouri, United States v. Jimmy Timberlake. Ms. Morgan, when you're ready. Good morning. There are two evidentiary issues here that I think tip the scales for the conviction in this case. One of them is a Confrontation Clause issue. And then the second issue is whether or not evidence regarding the details about a prior conviction should have come in. So I want to start with the Confrontation Clause issue first. And first do something that just pains me to do, but I have to. And that is to say the government is right that it should be analyzed under plain error. Thank you. Proceed. And so looking at that, the question becomes, what is the nature of this particular statement? The difficulty, of course, is that because this wasn't addressed properly and we're looking at it under plain error, we don't have any feedback from the court from that particular time. We don't have any feedback from the prosecutor at that particular time. So we're just kind of looking at overall the circumstances about the way that that statement came in and what kind of impact it had on the particular case. And so you have a situation where you essentially have an accomplice, the woman whose house it was where the drugs and the guns were found, who is saying, those aren't my guns. So I think we can categorize her that, and it's in the context of an interrogation. So I don't think there's any question that it falls within the scope that we would typically think about Crawford. But the government's counter-argument to that is, well, but if we're offering it just for the purpose of explaining what he did in the investigation, then it's not actually hearsay, and therefore it doesn't trigger Crawford. I take issue with that. And the reason is because, sure, they can say this is the reason why he did not interview that. But it doesn't change the nature of the fact that it is still offered for the truth of the matter. There's no limiting instruction. There's no anything that says this is the reason it's coming in. All that we have in this context is someone saying, this lady said, who it's only two people in that house, this lady said the guns weren't hers. And so when you look at it in that particular context, I think the only way that you can assess it is to say, look, that is the kind of concern that Crawford was addressing. And therefore, the other cases that are cited are not on point because this has a dual role here in the case. What about the redirect, where on redirect they say why they didn't do more forensic testing, and it comes back to the same point? Why doesn't that kind of show it was investigative? So I think that it, look, something can come in and be investigative. What I'm saying is that if it comes in also as a truth of the matter, then it has to be analyzed under the Crawford standard. And Crawford isn't very forgiving when you're talking about a testimonial statement, and it's given within the confines of an interrogation. So I would say based on that, that that's how I would characterize that particular statement. Well, we know we're here on plain error because the only objection that's raised at the time is hearsay. Right? It's raised for hearsay. It comes in sort of classic, oh, you opened the door, and he's just explaining what you did. The court's never afforded any opportunity to understand that there may be a Crawford problem. And it is something that could easily have been solved with just a cautionary instruction, and you just move on. Right? Now, when you look at it and you look at all the rest of the evidence, why is it not harmless beyond a reasonable doubt? So I'm going to jump to that answer in connection with the other piece of evidence that came in. So when you look at, like, the overall context of the case, sure, you've got a house. You've got two people in it. You've got three guns in there, and you've got drugs. And you've got the one witness can say, they're mine, and she's not a prohibited person. Right? She's not a prohibited person, but listen, you've got drugs behind the washing machine in her house. Right? And him near the washing machine, right? I mean, kind of has to look like he's the guy that put it there. Sure, but think about how, like, this is not like, hey, I'm casually standing here, right, when they encounter him. Right? It's the door gets busted in, and he's moving. So it's not like, hey, I can do this in the split second, take these drugs from wherever they are, shove them behind there. It's casual movement through the house. I mean, when I say casual movement, he's moving. What about the Miranda statements? I've got to jump in with you. Yeah, sure. Yeah, his Miranda statements where he says she doesn't know anything, she's a good person. I'm, of course, paraphrasing this, you know. Yes, yes. And she doesn't know anything about anything. So paraphrasing those, what about those when he says that, when we get to harmless beyond a reasonable doubt? So let me try and make the argument here.  Because I think the problem when he's saying she doesn't know anything, and then he starts, and he adds on to that, and he starts suggesting he has information about other drug activity. The question is, what is he actually referring to? Is he referring to that she doesn't know anything about the drugs that are behind the washing machine, or that she doesn't know things about, like, what he knows about things that are happening in St. Louis? It's not concrete. That doesn't know anything is in response to a question that talks about both drugs and firearms, right? I think it's just about drugs. Okay, proceed. I had it wrong in my head. Go ahead. So then the question becomes, of course, she could be responsible under a 924C analysis. She still has exposure, right? Because it doesn't require her to be a felon if you're going to, given the way that this was charged. It was charged as a 924C. So I think there's the possibility of, like, I think that it's not just completely slam dunk, that there's questions out there. And for that reason, I think that there's questions about what the impact of this on the overall case. But moving on to the other piece that we argued, and that is whether or not the details of this prior conviction should come in. So, you know, under a normal circumstance, I would have been objecting to, like, not only the whole thing, but also this exhibit number 58. And that's because there was a pretrial hearing, and all of it was objected to. And then the judge decides that he's going to allow the details to come in. He's made a decision. The details come in. And then at the very end of the details, exhibit number 58 comes in, and the attorney says, no objection. I'm not sure why the attorney did that, but I think it sort of foreclosed me being able to argue about exhibit number 58. But it doesn't foreclose me being able to argue about all of the details. And the details are what are most problematic here. Because what they're talking about is, in 2008, like, this drug transaction that's happening in a parking lot, and this cop is visually able to see, like, the exchange taking place. And after the follow-up, they're able to, like, actually seize the drugs and confirm their drugs, and there's a resulting conviction. That's so different, though, than the observation that they have here. And the observation that they have here is, hey, yeah, I saw this guy in the parking lot. But there's nothing to say that this was actually a drug transaction. And so when you talk about having, like, the lawyer would have been in great shape if all you can say is, look, they're calling it a drug transaction, but he doesn't see anything, right? But then you bring in this prior, and all of a sudden, like, the pieces start connecting about what happens, even though it's pure speculation about what that activity was. Because nobody sees anything exchanged. There's no exchange, right? And they never did any follow-up afterwards, like, stop the person, either person, to see if there's drugs. I'm going to stop. Okay, good. And you'll have a whole minute, by the way. Thank you. When you come back up. Mr. Davids. May it please the Court, my name is Justin Davids. I'm an AUSA for the Western District of Missouri, and I represent the Appalachian United States of America. Good morning. First, I want to say thank you. I appreciate Appellant's concession on the standard review on the confrontation issue. One thing regarding that I do want to clarify is a couple of times the Court here referred to harmless beyond a reasonable doubt. If we're under plain error, it's the Appellant's burden now to provide that. And I know that that's essentially the same. We've got to end up with harmless beyond a reasonable doubt, right? Sure. They have to show that they had a substantial right. That being said, I think in this case that, one, the statement was made during redirect examination. And part of the defendant's defense during this whole trial, like from opening arguments to his questioning of the officer to closing arguments, was that the officer and law enforcement not only didn't do enough, but specifically they didn't try to get DNA. And so this redirect, once those statements were made and those arguments were made, was in response to that. And it was simply, well, why didn't you feel like you needed to do that? And the officer explained himself. And the officer didn't start off with the statement either. He explained, well, first of all, there was evidence that we found in the house. There was the gun on the counter next to the defendant's ID, next to this thousand-some dollars, and we never witnessed him having a job. And in addition, then the woman who was asleep in the bedroom at the time made this statement. And that's where it ended. But even so, here it's either harmless or the defendant or the appellant hasn't proven that their substantial rights were affected because, as pointed out, it's ultimately cumulative of his own Miranda statement. Which of our cases do you think is closest to Mr. David's? For this, I think Shores, Malik, and Burns are all instructive here. And so anyway, and finally there was the overwhelming evidence in this case. And appellant makes reference to that the drugs were found behind the washing machine. That's true, but also in that same laundry room were the three phones. And the defendant admitted that the phones were his. And text messages regarding the drug transactions were found. How many rooms were there in the homes? I just saw that this second. You know, Your Honor, I don't know that answer. The record doesn't show that. No, the record may show that. I did not think to look for it. Proceed. So in any event, so it isn't just that the drugs were found in there. And also the defendant's own Miranda statement makes clear that he was aware that those bags were there. He talks about cutting the substance with sugar. So it isn't a surprise to the defendant. In the Miranda interview, it's not a surprise to the defendant that any of this stuff was found in the house. And that's interesting because if you look at it, he said he was cutting it with sugar so no one would get killed, both of which seems to be pointing at something other than personal use, right? Yes. I mean, you would not from that type of a comment draw the inference that I'm afraid of killing myself, so I'm cutting it with sugar. Right. And so if you just look at the reasonable inferences that the finders of fact could draw, the evidence becomes pretty plain that there was trafficking going on, that he was involved and aware. Right. I agree. Moving on to the 404B issue, and I noted some confusion over what the standard of review would be. I appreciate both the clarifying statement from appellant this morning, but also in preparing for today, I reread the defendant's motion for acquittal, which is document 109. And on page three, he says the same thing, that he was not objecting to the admission of the certified conviction. He was objecting to the underlying facts. So we are in abuse of discretion here. Oh, yeah. But that being said, first of all, I believe that the facts here fall within the heartland of this court's general cases on 404B and prior drug convictions in a subsequent drug trafficking trial. I think Davis has a lot to say about that, the court's recent Davis opinion that was cited in government's brief. And appellant made some comments about how this really related to the April 2020 parking lot transaction, which was speculative as to whether that was a hand to hand. Right. And so, first of all, that evidence came in anyway. The government put that evidence in to show the defendant's intent or possession with intent to distribute the drugs that were subsequently found in the house. So the 404B evidence can relate to that. And that 404B evidence also relates directly to whether the defendant had the intent to distribute the drugs found. And the judge did give a limiting instruction, right? The judge did give a limiting instruction. And I think the judge said that every time he discussed this, right? Yes. Yes. The judge gave the standard Eighth Circuit's limiting instruction on the 404B evidence. And I would assert that when you look at the totality of the evidence, that ultimately that April parking lot incident was not speculative, even without the 404B evidence, right? Not only do we have this very interesting transaction, which is only a few minutes with something going on. And then everyone drives away and an officer testifying that this is consistent with a hand to hand drug transaction. Then we find the defendant. We have evidence of the defendant going to St. Louis. And I don't know if it was clear in the briefing. But he's driving to St. Louis late at night, stays there, and then immediately turns around at 1 in the morning. So he's barely in St. Louis and comes back to Springfield. This is not a trip to go see a baseball game or something. He's up there for a very short period of time and comes back. We look at the rest of the evidence. The evidence that was found in the house, that this is a distribution amount of drugs. The evidence on statements that he knows drug dealers and that he can help the police catch drug dealers and people with guns. And when the jury looks at that, all of the evidence, they are not speculating then at that point what happened in the parking lot in April, right? So it's more than this, the facts of his prior conviction that support that that was a hand to hand drug transaction. But even if it was error to admit it for the same reasons mentioned before, the evidence was overwhelming in this case. If there are no further questions. Seeing none. Thank you, Your Honor. Thank you for the argument. Ms. Morgan. I think it's important for the court to decide if the admission of this parking lot incident was erroneous. Regardless of how the court comes down on whether it finds that it was harmless error or not, I think the idea that folks can introduce things that are just so speculative. And this came up in the context of they're following this guy. They're trailing this guy. But they never really ever see anything. They just have these bits and pieces that they think are suspicious. And so the idea that you could take something where nobody sees anything happen other than we're in a parking lot. And then you bring in something from 20, or not 20 years ago, 10 years before then to say, hey, we saw him actually do this in a parking lot 10 years ago. To try and draw an inference where we had an absence of fact. There's such a big gap there. I think that's erroneous. And I think we should be looking at that from the perspective of a ruling. Thank you. Thank both counsel for the argument. Case 25-1351 is submitted for decision by the court. Counsel excused. And Ms. McKee.